1 So.3d 618 (2008)
ST. JOHN BAPTIST CHURCH OF PHOENIX, Louisiana
v.
Cornelius THOMAS, Samuel Reed, Washington Goodeye and Philip Hill.
No. 2008-CA-0687.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 2008.
*619 Lakeisha N. Jefferson, Jefferson Law Firm, New Orleans, LA, for St. John Baptist Church of Phoenix, Louisiana.
*620 Shawn T. Deggins, Deggins & Associates, L.L.C., New Orleans, LA, for Gertrude Thomas.
George Pivach II, Timothy Thriffiley, Pivach, Pivach, Hufft Thriffiley & Nolan, L.L.C., Belle Chasse, LA, for Thea Manard.
Stephen C. Braud, Adrian A. Colon, Jr., Ballay Braud & Colon, PLC, Belle Chasse, LA, for Crystal Thomas, Terrill Cosse, Desra Hill Harrison.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS, SR., and Judge PAUL A. BONIN).
DENNIS R. BAGNERIS, SR., Judge.
Defendants and Intervenors appeal the judgment of the trial court declaring that the Plaintiff, St. John Baptist Church of Phoenix, Louisiana, ("St. John Baptist Church") is the owner of the property at issue through acquisitive prescription of thirty years. For the following reasons, we affirm.

FACTS
On February 6, 2007, St. John Baptist Church filed a petition for declaratory judgment alleging that it has acquired ownership of property through thirty (30) years acquisitive prescription. The property at issue is located in Plaquemines Parish, Louisiana, and is legally described in these proceedings as:
A certain tract of land situated in the Parish of Plaquemines, in this State, on the left bank of the Mississippi river, designated by the Number 20 on a plan drawn by Uncas Lewis, Surveyor, dated twenty-first November 1870 and annexed to an act passed in this office on the twenty-fifth day of January 1972; which said tract of land measured one arpent front on the Mississippi River, by forty arpents more or less in depth, between lines closing in the rear as a angle of about sixteen and one-half degrees, bounded above by lot number twenty-one and below by lot number nineteen according to said plan, together with all the rights, ways, privileges, servitudes and advantages thereunto belonging or in wise appertaining.
Said tracts of land is part of a larger tract of land formally known as the "Ste. Sophie Plantation" and which was acquired by the late Albin Soulie from H.E. Duconge, per act passed before me, notary, on the thirtieth day of December 1870.
The petition for declaratory judgment avers, in pertinent part:
1.
Made Defendants are the deceased, Cornelius Thomas, Samual Reed, Washington Goodeye and Philip Hill, which pursuant to LSA-CCP Article 734, are sued through their succession representatives. On information and belief, no succession representative has been appointed for Defendants and Petitioner has been unable to locate any heirs and/or legatees of the Defendants. Pursuant to LSA-CCP Article 5091, Defendants should be served through a court appointed attorney.
* * *
4.
On November 25, 1874, Cornelius Thomas, Samual Reed, Washington Goodeye and Philip Hill, purchased the property described in Exhibit A by act registered in COB 20, folio 24 of the conveyance records of Plaquemines Parish, Louisiana....
* * *
9.
The sole purpose for the purchase of the property described in Exhibit "A" by *621 Cornelius Thomas, Samual Reed, Washington Goodeye and Philip Hill was to create St. John Baptist Church of Phoenix, Louisiana.
10.
Since that date St. John Baptist Church of Phoenix, Louisiana, has exercised possession of, control of and used the property described in Exhibit "A".
11.
St. John Baptist Church of Phoenix, Louisiana, has exercised possession of, control of and used the property described in Exhibit "A" for a period of greater than thirty (30) years. (Exhibit omitted)
12.
Accordingly, Petitioner is entitled to a declaratory judgment declaring that Petitioner has acquired ownership of the property described in Exhibit "A" through thirty (30) years acquisitive prescription, and that the Defendants have no ownership interest or other rights in or to the property described in Exhibit "A".
In consideration of St. John Baptist Church's motion for appointment of attorney, the trial court appointed attorney Kevin Conner to represent the deceased defendants, Cornelius Thomas, Samual Reed, Washington Goodeye, and Philip Hill. Thereafter, appellants Gertrude Thomas[1] and Thea Brocks Manard[2] enrolled counsel of record and claimed an ownership in the property.
A bench trial in this matter was held on March 3, 2008. Thereafter, the trial court signed a judgment in favor of St. John Baptist Church finding that it has openly possessed Lot 20 as owner and acquired ownership of the property through thirty years acquisitive prescription. In its well written reasons for judgment, the trial court wrote, in pertinent part:
The property upon which the Church is located was obtained by Cornelius Thomas, Samual Reed, Washington Goodeye and Philip Hill on November 25, 1874, on behalf of the as yet unincorporated Church, which took possession of the property almost immediately. The Church has possessed the property uninterrupted since 1874.
The only people who contest the ownership of the property by the church by acquisitive prescription are Gertrude Thomas, an heir of Cornelius Thomas, and Thea Manard, who comes into this litigation under most strange circumstances. They concede that the Church has used the property for 133 years, but argue that the Church's possession is precarious, not adverse, and title has never been obtained as a result.
Because there is no question of possession by the Church for well over 100 years, the issue presented in this litigation is the nature of that possession. La. C.C.art. 3437 provides that possession is precarious when exercised with the permission of the owner. As such, acquisitive prescription does not run in favor of a precarious possessor who is presumed to possess for another despite his intent to possess for himself.
In order for a precarious possessor to become an adverse possessor, he must give the owner some notice that his property is in jeopardy. This notice may be implied if there is open, notorious, public, continuous and uninterrupted possession to the exclusion of the owners.

*622 It is argued in this matter that the Church cannot claim ownership because they possessed the property with the specific consent of the owners. Certainly the evidence demonstrates that the property was turned over to the Church almost immediately after being purchased, giving rise to a presumption that the Church possessed not for the titled owners, but for the Church itself.
In fact, over the next many decades oil, gas and mineral leases were granted by the trustees of the Church; the State of Louisiana Department of Highways sued the Church to expropriate a right of way from the front portion of Lot 20; the property has been listed on the assessment roles of the Parish of Plaquemines in the name of the Church for an indeterminate number of years; and the Parish Government has taken steps against the Church to remediate dilapidated houses on the property, recognizing the Church as the owner of Lot 20.
In Delacroix v. Perez, 1998-2447 (La. App. 4 Cir. 11/8/00), 794 So.2d 862, the Fourth Circuit stressed that:
The fact of physical possession by a non-owner is sufficient notice of the record owner and the public at large that a non-owner intends to possess the property for himself, as owner.... Corporeal possession and the necessity of having the intention to possess as the owner may be inferred by the surrounding circumstances.
Clearly, all of the acts taken by the Church mentioned, such as executing oil, gas and mineral leases, responding to expropriation litigation, and taking remedial action in response to governmental complaints, evidence an intent to possess as owner. However, much more decisive of the issue are the actions on the part of the Church to expand their dominion over the property beyond using if for a church.
Specifically, for many years the Church has allowed families to build homes or locate mobile homes on the portion of Lot 20 behind the church building itself. While the opponents to this litigation might argue that using the property for a church with the permission of the original owners is precarious possession, using the property in this manner, that is, in a manner different then originally intended and in such a way as to evidence possession as an owner, constitutes adverse possession.
The Church has treated this propertyall of this property, as owner for well over 100 years. The Church has possessed this property as owner and in such a manner as to have become an adverse possessor. Certainly, allowing several generations of 14 different families to live on the property is notice that to the titled owners that their property is in jeopardy. This notice in this case and in this form is in fact open, notorious, public, continuous and uninterrupted and constitutes possession to the exclusion of the owners.
While Thea Shalanda Brocks Manard appeared and opposed this suit by the Church, this Court is at a loss as to the source of her standing to do so. By her own admission, she is not related to the 4 original owners and claims ownership to the property by a judgment of possession of an uncle in whose name no documents can be found establishing any right to this property. The judgment of possession putting her in possession of Lot 20 is, as far as this Court can determine, fraudulent and without effect.
Gertrude Thomas and Thea Manard now appeal this final judgment. Crystal Thomas, Terrill Cosse and Desra M. Harrison ("Intervenors") filed a motion and *623 order for intervention and appeal, which the trial court granted.

DISCUSSION
Appellants, Gertrude Thomas, Thea Manard, and the Intervenors, basically assert that the trial court erred in finding that St. John Baptist Church satisfied the requirements for proving ownership of the property at issue through acquisitive prescription of thirty years. Appellant, Thea Manard, also argues that the trial court abused its discretion in allowing Reverend Rommel Griffin to testify at the trial. Further, the Intervenors argue that they were indispensable parties to the declaratory action and that any adjudication made without their being made a party was an absolute nullity.

Prescription
Possession of an immovable is the detention or enjoyment of a corporeal thing. La.Civ.Code art. 3421. "Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." La.Civ.Code art. 3425. Louisiana Civil Code Article 3486 provides that ownership of an immovable "may be acquired by the prescription of thirty years without the need of just title or possession in good faith." Possession occurs when one takes corporeal possession of the thing and intends to possess it as the owner. La.Civ. Code art. 3424. To acquire a thing by prescription, possession must be commenced by corporeal possession, or civil possession preceded by corporeal possession; however, the "possession must be continuous, uninterrupted, peaceable, public, and unequivocal." La.Civ.Code art. 3476. "Actual corporeal possession is necessary to commence thirty years acquisitive prescription, and external and public signs are required to keep possession running." Phillips v. Fisher, 93-928, p. 4 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, 1308.
"The party asserting acquisitive prescription bears the burden of proving all the facts that are essential to support it." Id. at 1307. A trial court's decision on whether a party has possessed property sufficient to prove thirty year acquisitive prescription is a factual determination and cannot be reversed on appeal unless it is manifestly erroneous or clearly wrong. Id. Furthermore, a trial court is given great deference, and its findings are virtually never manifestly erroneous or clearly wrong when based upon determinations of the credibility of witnesses. Id. (citing Rosell v. ESCO, 549 So.2d 840 (La.1989)).
St. John Baptist Church contends that the church has openly possessed all of Lot 20, which measures 1 arpent front on the Mississippi River by 40 arpents in depth, for a period well in excess of thirty (30) years. St. John Baptist Church presented the testimony of Louise Barthelemy, a deaconess of St. John Baptist Church, who testified that she is 82 years old and that she has been a member of St. John Baptist Church for more than thirty (30) years. Ms. Barthelemy testified that as long as she can remember, Lot 20 has always been church property. Ms. Barthelemy testified that she has lived at 185 St. John Lane, which is located on Lot 20, her entire life and that in order to rebuild her home after Hurricanes Betsy and Katrina, she had to get authorization from the pastor of St. John Baptist Church since the church owned the property.
St. John Baptist Church presented the testimony of Winston Thomas, Sr., a deacon of St. John Baptist Church, who testified that he has been a member of the church for more than thirty (30) years. He testified that for as long as he can remember, the church has always been located on Lot 20 and that this property has always been church property. Mr. *624 Thomas further testified that the church was rebuilt after Hurricane Betsy and that although the church was destroyed by Hurricane Katrina, the grass is still maintained and cut by members of the church.
St. John Baptist Church presented the testimony of Glenn A. Fleming, an employee of Plaquemines Parish Assessor's Office for the past 21 years, who testified that the property located at Lot 20 is assessed in the name of St. John Baptist Church. Mr. Fleming testified that as long as he has been employed by the Assessor's Office, Lot 20, which he testified measures "one arpent by 40, bound above by lot 21, and below by 19", has been assessed in the name of St. John Baptist Church.
St. John Baptist Church presented the testimony of Reverend Rommel E. Griffin, the pastor of St. John Baptist Church, who testified that he was baptized at St. John Baptist Church in 1963, and that it has always been his understanding that the property at issue belonged to the church. Reverend Griffin testified that roughly fourteen houses actually sat on the St. John Baptist Church land prior to Hurricane Katrina, and that the church has had to sign off on the permits to allow the occupants of those homes to rebuild or repair the damages caused by the hurricane. Reverend Griffin testified that because Plaquemines Parish Government Legal Department recognizes St. John Baptist Church as the owner of Lot 20, the church was sent a letter regarding a home on Lot 20 that had become blighted. Further, Plaquemines Parish Government Legal Department invoiced the church for the demolition of that particular structure. Reverend Griffin also testified that several oil, gas, and mineral leases were granted by the trustees of St. John Baptist Church over the past fifty years. Reverend Griffin testified that despite the church's destruction in 2005 as a result of Katrina, the church continues to openly hold services on Lot 20.
St. John Baptist Church established through the testimony of their witnesses that the original church building was located at the front of Lot 20 and was destroyed by Hurricane Betsy in 1965. The church was subsequently rebuilt at the rear of Lot 20 where it remained until 2005 when Hurricane Katrina destroyed the church. The testimony revealed that the St. John Baptist Church allowed fourteen families to live on the Lot 20, within the boundaries described as 1 arpent by 40 arpents, for the past thirty years or more.[3] Further, the record evidences a November 10, 1966 lawsuit filed by the State of Louisiana against St. John Baptist Church in order to compensate St. John Baptist Church "for the required permanent servitude of right of way on, over and across" its property.
Aside from the use of hearsay and self-serving testimony, appellants offered no evidence to counter St. John Baptist Church's evidence of possession in excess of thirty years. In light of the testimony contained in the record, and giving great deference to the trial court in terms of judging credibility determinations, we find no manifest error in the trial court's judgment that found St. John Baptist Church has openly possessed Lot 20 as owner and has acquired ownership through (30) years acquisitive prescription. Accordingly, we find the record supports the trial court's determination that St. John Baptist Church has carried its burden of proof in *625 support of thirty years acquisitive prescription.

Reverend Rommel E. Griffin's Testimony
In her appellate brief, Thea Manard alleges that the trial court abused its discretion in allowing Reverend Rommell Griffin to testify at the trial. Specifically, Ms. Manard argues that Mr. Griffin was never identified as a potential witness in discovery or in pre-trial court's inserts prior to trial and that the trial court abused its discretion in allowing him to testify.
In matters of discovery, such as whether a witness has been listed in a timely manner, decisions of the trial court should not be disturbed in the absence of an abuse of discretion. Harwell v. Haspel-Kansas Investments Partnership, 598 So.2d 1284 (La.App. 4 Cir. 4/30/92). Specifically, where a pre-trial order has not been complied with, as is the case here, it is within the trial court's discretion to disallow witnesses, expert or not, from testifying. See Reed v. Columbia/HCA Information Systems, Inc., 00-1884 (La.App. 5 Cir. 04/11/01), 786 So.2d 142.
Assuming arguendo that the trial court erred in allowing Reverend Griffin's testimony, it was harmless error. The trial court had more than sufficient testimony from the other witnesses and exhibits presented to determine that St. John Baptist Church had carried its burden of proof in support of thirty year acquisitive prescription. Accordingly, we find no merit in this assignment of error.

Indispensable Parties
On appeal, the Intervenors argue that because they are heirs of Cornelius Thomas and Phillip Hill, they are indispensable parties to this declaratory action and that any adjudication made without their being made a party was an absolute nullity. We find no merit in this assignment of error.
When the Petition for Declaratory Judgment was filed, St. John Baptist Church requested that the trial court appoint a curator ad hoc to locate Cornelius Thomas, Samual Reed, Washington Goodeye, and Philip Hill. The trial court granted plaintiff's request for a curator ad hoc and appointed Kevin D. Conner, attorney at law, to represent the interests of Cornelius Thomas, Samual Reed, Washington Goodeye, and Philip Hill. Mr. Conner, on February 16, 2007, published a public notice in the Plaquemines Gazette requesting "any one knowing the whereabouts of: Cornelius Thomas, Samual Reed, Washington Goodeye and Philip Hill Their Heirs or Assigns" to contact him. On March 13, 2007, Mr. Conner filed an answer on behalf of the defendants. At that time, no heirs sought to protect any purported interest in the property with the exception of appellant, Gertrude Thomas. The trial was originally set for trial on June 12, 2007; however, the trial was re-set to March 3, 2008 to allow any and all interested parties to institute and protect their claims. On July 25, 2007, appellant Thea Shalanda Brocks Manard became a party to the suit and requested a continuance in order to conduct further discovery. Because the intervenors allege that they are heirs of Cornelius Thomas and Phillip Hill, they were made parties to the proceedings through the court appointed curator ad hoc, Mr. Conner, who filed an answer on their behalf. Additionally, the intervenors have failed to provide: (1) any documentation to prove that they are, in fact, related to Cornelius Thomas and Phillip Hill; and/or (2) any judgments of possession which would place them in possession of the subject property. Accordingly, we find no merit in the argument that they are indispensable parties and that any adjudication *626 made without them is an absolute nullity.
For the reasons set forth above, the judgment of the trial court granting St. John Baptist Church's petition for declaratory judgment declaring it to be the owner of the property at issue through acquisitive prescription of thirty years is affirmed.
AFFIRMED.
BONIN, J., concurs and assigns reasons.
BONIN, J., concurs and assigns reasons.
I respectfully concur. There is no doubt that the congregation of St. John Baptist Church in Phoenix, Louisiana, has occupied a church on Lot 20 for more than 130 years. During that entire time the title to Lot 20 has been in the names of Cornelius Thomas, Samuel Reed, Washington Goodeye and Philip Hill. The intentions of the title owners with respect to the nature of the congregation's possession of Lot 20 are hidden from the historical record.
When the congregation applied to the SBA for a loan to rebuild its church after its destruction by Hurricane Katrina, it was "disturbed" in its possession by the continuing recordation of the defendants' title to Lot 20. La. C.C.P. arts. 3655 and 3659. It then brought this action for declaratory judgment, La. C.C.P. arts. 1871 et seq., which is governed by La. C.C.P. art. 3654.
In order to prevail under the operative facts of this case the congregation bore the burden of proving that its possession was not "precarious" for the thirty years before the filing of the lawsuit. La. C.C. art. 3437. Under the law existing thirty years ago, a "possessor must manifest his intention to possess for himself by overt and unambiguous acts." Delacroix Corporation v. Perez, 1998-2447, fn. 1 (La.App. 4 Cir. 11/8/00), 794 So.2d 862. Because this is a "precarious possession" case I emphasize the importance of written or documentary evidence to corroborate testimonial evidence, even when the testimony is highly persuasive, if not uncontradicted, as here. The congregation accepted payment from the State of Louisiana in 1966 for a portion of Lot 20 which was expropriated for a new highway. That documentary evidence establishes that the congregation was overtly and unambiguously possessing Lot 20 for itself. Receiving payment for the alienation of a portion of the property which is then recorded on the public record constitute the necessary "overt and unambiguous acts". Moreover, such establishes "the actual time at which the positive intention to hold the property as owner is made known by the adverse possessor." Thomas v. Congregation of St. Sauveur Roman Catholic Church, 308 So.2d 337, 340 (La.App. 1 Cir.1975). That time, in this case, preceded the uninterrupted and continued possession of Lot 20 by the congregation for another thirty years.
The other documentary evidence that Lot 20 has been carried on the assessment rolls of Plaquemines Parish for more than twenty years and that the parish's regulatory authorities officially consider the congregation as the responsible owner of Lot 20 support the trial court's credibility determinations of the testimonial evidence.
The congregation prevailed against the title owners, their heirs, successors, and assigns that it, and not any of them, was entitled to the ownership and possession of Lot 20 under La. C.C.P. art. 3654. The trial court's decision declaring that St. John Baptist Church in Phoenix, Louisiana is the owner of Lot 20 is correct and the recordation of that judgment, when it is final and unappealable, terminates the disturbance to the congregation's possession *627 of Lot 20 caused by the earlier recordation of the title of Cornelius Thomas et al.
NOTES
[1] An alleged heir to Cornelius Thomas.
[2] An alleged heir to James Brocks, Jr.
[3] Ms. Barthelemy testified that she has lived on the St. John Baptist Church property since she was born in 1925.