STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0038

SUSAN L. PITTMAN

VERSUS

HENRY P. FLANAGAN

Judgment Rendered: **SEP 2 7 2019**

* * * * *

On Appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 2011-14788

Honorable Dawn Amacker, Judge Presiding

* * * * *

Eric A. Bopp
Walter R. Woodruff, Jr.
Tyler S. Loga
Mandeville, Louisiana

Attorneys for Appellant/Defendant/
Plaintiff-in-Reconvention,
Henry P. Flanagan


Lindsey M. Ladouceur
Jane C. Alvarez
Abita Springs, Louisiana

Attorneys for Appellee/Plaintiff/
Defendant-in-Reconvention
Susan L. Pittman


Ernest S. Anderson
Slidell, Louisiana

Attorney for Appellees/Defendants-
in-Reconvention
C.P. and T.P., minor children

* * * * *

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

Higginbotham, J. dissents and assigns reasons.

**PENZATO, J.**

Appellant, Henry P. Flanagan, appeals the trial court judgment setting child support for three minor children. For the reasons that follow, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Appellee, Susan L. Pittman, and Henry were divorced on October 3, 2003, and one child was born during the marriage. Henry agreed to pay child support for this child by consent agreement. Twins were born to Susan on May 15, 2004, and Susan alleged that Henry had formally acknowledged these children by placing his name on their birth certificates. It is undisputed that Henry is not the biological father of the twins, but that the birth occurred 225 days after the judgment of divorce, making Henry the presumptive father pursuant to La. C.C. art. 185. Susan originally filed this matter on August 19, 2011, when she filed a petition for registration of support order for modification, to establish child custody, to modify child custody, and to establish child support. As part of the petition and an amended petition, which was subsequently filed, Susan requested that the trial court order Henry to increase child support for his biological child and pay child support for the twins.[1]

Henry filed a motion to reduce child support on October 31, 2016, which was set for hearing on February 21, 2017. At the February 21, 2017 hearing, the trial court decided other pending matters, and continued the issue of child support until May 2, 2017. Prior to that hearing, on March 1, 2017, Susan filed a motion to reset the hearing on petition to establish Henry's child support obligation, which the trial court also set for hearing on May 2, 2017. On May 2, 2017, the trial court

---

[1] Henry filed a reconventional demand seeking to disavow the paternity of the twins that was the subject of a previous appeal before this court. In that decision, this court determined that Henry had abandoned the disavowal action. *Pittman v. Flanagan*, 2018-1566 (La. App. 1st Cir. 4/17/19), 2019 WL 1648954, *4 (unpublished).

2

continued the hearing on child support and other issues until June 21, 2017. The minutes do not reflect that a hearing took place on June 21, 2017. On December 13, 2017, the trial court heard other pending matters and noted that the only issue remaining was child support. On this same date, the trial court signed a case management schedule setting a trial on April 16, 2018, for the determination of child support. At the pre-trial conference held on April 6, 2018, Henry requested a continuance, which the trial court denied. On April 16, 2018, Henry was hospitalized, and the trial court did grant a continuance on the issue of child support until May 9, 2018.

The trial took place on May 9, 2018. At the conclusion of the evidence, the trial court took the matter under advisement and issued oral reasons for its ruling on May 15, 2018, implementing child support for all three children; making executory the arrearages owed by Henry; ordering Henry to maintain the three children on his health insurance; and setting percentages for extraordinary expenses of the children, such as tuition, books, athletic expenses, and travel. On June 11, 2018, the trial court signed a judgment in accordance with its oral ruling. It is from this judgment that Henry appeals.

## LAW AND DISCUSSION

Henry assigns as error that the trial court inappropriately limited the time of trial; erred in refusing to permit his financial expert to testify; and erred in refusing to allow the expert's entire testimony to be proffered.

### Manner of Trial

Henry claims that he was denied due process by the trial court's time limitation of the trial. He asserts that he was prevented from presenting "all relevant and admissible and noncumulative evidence in his possession by the allotted time." As support, he asserts that he had to make twenty-seven proffers on

3

the record while he only had time during the trial to introduce one exhibit into evidence.

We note that the transcript does not contain exact times, but there were some preliminary matters heard by the court prior to the beginning of the trial on May 9, 2018. After those matters, the following exchange took place:

BY THE COURT:

How much time did I tell each side you had today?

PLAINTIFF'S ATTORNEY:

You didn't.

BY THE COURT:

Generally speaking, you've got, particularly having taken up some time this morning already, you've got two hours, a little bit over two hours sometimes, each. Sometimes we can give you a little bit more than that. But for me to put on my reasons, with recesses and lunch, effectively plan on a couple hours. And that means that if you are speaking, whether you're cross-examining or you have witnesses on direct, or you're even addressing the court on issues like we just had, that time is counted against you.

The trial court noted they had begun at 9:30 a.m. and that the preliminary matters consumed approximately ten minutes for each party. Therefore, at that point, each party had one hour and fifty minutes of time remaining. The trial court also indicated that because the matter had been pending for quite some time, there was not a lot of new information that it had not heard before. Furthermore, the trial court observed that the parties had been seeing the hearing officer, and it was aware of all objections filed therewith. The trial court later noted that it had been dealing with this matter for approximately seven years.

To begin the trial, Susan called a financial expert, Susan E. Brown, a certified public accountant. When it was almost noon, the trial court warned Susan that she only had about ten to twelve minutes remaining and that Henry had about an hour and forty-five minutes remaining of his time. Ms. Brown continued on

4

direct examination for a little longer and then the trial recessed for lunch until 1:00 p.m., after which Susan introduced several exhibits. Henry then cross-examined Ms. Brown. The trial court noted at one point that an hour had passed since 1:00 p.m. While Henry was still cross-examining Ms. Brown, the trial court warned him that he only had fifteen minutes of his time remaining, and he elected to continue the cross-examination. The trial court allowed Henry ten extra minutes, noting that Susan had been given the same amount of time. The trial court specifically stated:

> Oh, look, it's been complex for a long time. But here's the bottom line: You two agreed to a whole-day setting. That's two hours each. I've given you two hours and ten minutes each. That's all we can do and me still put reasons on the record and me handle the rest of my docket. I wish we had more time, but we don't.

Mr. Flanagan raised an objection to the trial court's limitation of his cross-examination. There was also some discussion at this point in the trial that Susan had no remaining time, noting that it was 3:00 p.m. After a recess, the trial court indicated that Susan had used two hours and twelve minutes and that Henry had used one hour and forty-nine minutes, with twenty-three minutes remaining. After a discussion regarding whether Henry's expert, Stacey Singleton, a certified public accountant, would be allowed to testify, Henry testified on direct until his attorney had no further questions. The trial court informed him his time had been exhausted anyway, and his attorney responded that he had nothing more to ask Henry. Both parties then proffered exhibits.

Louisiana Code of Civil Procedure article 1631(A) provides that the "court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial so that justice is done." Also, La. C.C.P. art. 1632 provides for the normal order of trial, but expressly permits the trial court to vary the order "when circumstances so justify." It is only upon a showing of a gross abuse of discretion that appellate

5

courts have intervened, as the trial judge has great discretion in conducting a trial. *Louisiana Safety Ass'n of Timbermen v. Carlton*, 2012-0775 (La. App. 1st Cir. 12/21/12), 111 So. 3d 1076, 1081 (*citing Pino v. Gauthier*, 633 So. 2d 638, 648 (La. App. 1st Cir. 1993), *writs denied*, 94-0243, 94-0260 (La. 3/18/94), 634 So. 2d 858, 859).

In support of his position, Henry contends that the guidelines set forth in *Goodwin v. Goodwin*, 618 So. 2d 579, 583-84 (La. App. 2d Cir.), *writ denied*, 623 So. 2d 1304 (La. 1993), and subsequently adopted in *Plaia v. Stewart Enterprises, Inc.*, 2014-0159 (La. App. 4th Cir. 10/26/16), 229 So. 3d 480, 490-91, *writs denied*, 2016-2264, 2016-2261, 2016-2258 (La. 2/3/17), 215 So. 3d 692, 698, 699, were not followed. *Goodwin* stated that the due process clauses of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution guarantee litigants a right to a fair hearing. However, "due process" does not mean litigants are entitled to an unlimited amount of the court's time. *Goodwin*, 618 So. 2d at 583.

In *Goodwin,* the court noted that with today's overcrowded dockets, some trial judges, seeking to cut down the length of trials in cases pending before them, have imposed time limits on litigants for the presentation of evidence. *Goodwin*, 618 So. 2d at 583. *Goodwin* recognized that litigants still have a right to present all of their relevant, non-cumulative evidence, provided the probative value is not outweighed by undue delay and wasting the court's time. *Goodwin*, 618 So. 2d at 583. The court then adopted the five following non-exclusive factors that should be considered in determining whether the trial court denied a party its due process rights and exceeded the authority granted by statute: (1) before imposing time limitations in a case, the trial judge should be thoroughly familiar, through pretrial proceedings, with the claims of the parties, the proposed testimony and number of witnesses, and the documentary evidence to be presented; (2) if they are used, time

limits should be imposed on all parties, before any party presents any evidence, and sufficiently in advance of trial for the litigants to prepare for trial within the limits imposed; (3) the trial judge should inform the parties before the trial begins that reasonable extensions of the time limits will be granted for good cause shown; (4) the trial judge should develop an equitable method of charging time against each litigant's time limits; and (5) the trial judge should put all of his rulings regarding time limits and the reasons for the rulings on the record. *Goodwin*, 618 So. 2d at 583-584.

The trial court indicated on several occasions that it was familiar with the issues on trial, as the matter before it had been pending for at least seven years. At the beginning of the trial, the trial court informed both parties that each side would be limited to two hours. It appears from the record that each party was actually given a little over two hours and that the time constraints were applied equally to both parties. The trial court had an officer of the court keep the time, and several times during the day reminded the parties of the time remaining. The trial court continually advised the parties that it was familiar with the issues, that there had been several hearings before a hearing officer, and the reasons for limiting the time of the parties. Henry spent the majority of his allotted time cross-examining Ms. Brown, despite being reminded of the limited time he had remaining. The December 13, 2017 case management schedule reflected that the trial would be a one-day setting. While the record does not reflect the exact times of the trial, it is clear that at 3:00 p.m. the trial court informed Henry he had approximately twenty-three minutes remaining, and he was given that time to present evidence, including his own testimony.

Henry argues the fact that he had to make twenty-seven proffers and only had time to introduce one exhibit during the trial is evidence that the time limitation was prejudicial. We note that during the trial, Henry did attempt to

7

introduce at least five other exhibits, which the trial court ruled as inadmissible. We find this undermines his assertion that he only had time to introduce one exhibit. We further note that Henry provides no legal support for his proposition, and we do not agree that the number of proffers reflects that the time limitation was prejudicial. For instance, many of the proffers pertained to inadmissible evidence. Henry was unable to identify proffer D-2 during his trial testimony in order for it to be introduced. Proffers D-4 through D-7 are Louisiana Workforce Commission Occupational Employment and Wages for years 2012 through 2016, showing the annual average salaries for various occupations in Louisiana. Henry attempted to introduce these proffers at the trial allegedly to illustrate that Susan was voluntarily unemployed or underemployed, however, the trial court denied their admission, which Henry did not assign as an error on appeal. Proffer D-8 is an authenticated act of divorce from Haiti, which Henry attempted to introduce during the trial. The trial court denied its admission, and Henry has not assigned this evidentiary ruling as error. Proffers D-9 through D-14 pertain to the disavowal action, which has no bearing on these proceedings. Proffers D-15 through D-21 all pertain to various businesses for which Susan had been an officer or agent during different time periods. Henry attempted to introduce these proffers also to illustrate that Susan was voluntarily unemployed or underemployed. All of these proffers were registration documents with the Louisiana Secretary of State showing companies that were "inactive", except for one, which was "not in good standing." Given the trial court's ruling on the inadmissibility of Proffers D-4 through D-7, and its comments regarding Susan's disability and her ability to care for two special needs children, it is highly unlikely that the trial court would have admitted Proffers D-15 through D-21. Therefore, we do not find that the number of proffers has any relevance regarding Henry's claim that he did not have enough time to present his evidence.

8

We do not find that the trial court specifically informed the parties before the trial that reasonable extensions of the time limits would be granted for good cause shown. However, we note that the trial court permitted each party additional time, and each party was permitted to proffer their evidence. After a thorough review of the record, we are unable to find that the trial court grossly abused its discretion in conducting the order and timing of the trial.

**Refusal to Allow Witness Testimony**

Henry claims that it was error for the trial court to refuse to allow his expert, Mr. Singleton, to testify on his behalf. Susan objected to the inclusion of Mr. Singleton's testimony. The trial court refused to allow Mr. Singleton to testify because Henry did not disclose the expert to Susan until April 24, 2018. Included in the December 13, 2017 case management schedule was the requirement that the parties exchange lists of witnesses, including experts at least forty-five days prior to the April 16, 2018 trial.

Henry argues that he was unaware that Susan had hired a financial expert until a hearing officer conference was held on March 13, 2018. He also argues that he immediately sent documents to Mr. Singleton to review. Henry claims that because it was tax season, he was unable to notify Susan of the availability of Mr. Singleton until April 24, 2018.

Susan counters that the trial was originally set for April 16, 2018, which Henry sought to have continued before that date. The April 16, 2018 trial was ultimately continued because Henry was in the hospital. Henry points to nothing in the record to illustrate that he had retained or exchanged his expert's name at least forty-five days prior to trial. Henry eventually filed an amended witness list including Mr. Singleton's name on April 26, 2018, after the original trial date and fourteen days prior to the May 9, 2018 trial.

In *Southern Casting of Louisiana, Inc. v. Houma Avionics, Inc.*, 2000-1930 (La. App. 1st Cir. 9/28/01); 809 So. 2d 1040, 1055 (citations omitted), the court noted that:

> Louisiana Code of Civil Procedure article 1551 allows the trial court to render orders that control the subsequent course of the trial unless modified at the trial to prevent manifest injustice. The law provides that an orderly disposition of each case and the avoidance of surprise are inherent in the theory of pre-trial procedure and are sufficient reasons for allowing the trial judge to require adherence to the pre-trial order and the conduct of an action. Although the trial court is vested much discretion to amend its pre-trial order this discretion must be exercised to prevent substantial injustice to the parties who have relied on the pre-trial rulings and structured for preparation and presentation of their cases accordingly. Only upon a showing of an abuse of that discretion should the appellate court intervene. Additionally, the trial court's discretion in controlling the admission of expert testimony is well established in Louisiana jurisprudence[.]

Specifically, where a pre-trial order has not been complied with, it is within the trial court's discretion to disallow witnesses, expert or not, from testifying. *St. John Baptist Church of Phoenix v. Thomas*, 2008-0687 (La. App. 4th Cir. 12/3/08), 1 So. 3d 618, 625.

The case management schedule in this matter was signed on December 13, 2017, requiring the disclosure of witnesses forty-five days prior to trial. (R. 654-55). We find nothing in the record evidencing Henry's compliance therewith. Therefore, we find no abuse of the trial court's discretion in refusing to allow a witness to testify that would have violated the trial court's case management schedule.

**Proffered Testimony**

Henry also claims that the trial court erred in refusing to allow him to proffer the entirety of Mr. Singleton's testimony. After refusing to permit Mr. Singleton to testify, the trial court indicated that Henry could proffer a summation of Mr. Singleton's testimony, not the entire testimony.

Louisiana Code of Civil Procedure article 1636 provides:

A. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.

B. At the request of any party, the court may allow any excluded evidence to be offered, subject to cross-examination: on the record during a recess or such other time as the court shall designate; or by deposition taken before a person authorized by Article 1434 within thirty days subsequent to the exclusion of any such evidence or the completion of the trial or hearing, whichever is later. When the record is completed during a recess or other designated time, or by deposition, there will be no necessity for the requesting party to make a statement setting forth the nature of the evidence.

C. In all cases, the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.

D. If the court permits a party to make a complete record of the evidence held inadmissible, it shall allow any other party the opportunity to make a record in the same manner of any evidence bearing upon the evidence held to be inadmissible.

The trial court did not permit Henry to make a complete record of Mr. Singleton's testimony, but did allow him to proffer the nature of Mr. Singleton's testimony had he been permitted to testify. Louisiana Code of Civil Procedure article 1636(A) allows the trial court this discretion. Furthermore, there is nothing in the record to indicate that Henry availed himself of La. C.C.P. art. 1636(B) by deposing Mr. Singleton within thirty days of the trial. Finally, given our ruling that the trial court did not abuse its discretion in refusing to allow Mr. Singleton to testify in violation of the trial court's case management schedule, the issue as to whether his entire testimony should have been proffered is moot.

## CONCLUSION

For the above and foregoing reasons, we affirm the trial court's June 11, 2018 judgment determining child support. All costs of this appeal are assessed against Henry P. Flanagan.

**AFFIRMED.**

# STATE OF LOUISIANA

# COURT OF APPEAL

# NO. 2019 CA 0038

# SUSAN L. PITTMAN

# VERSUS

# HENRY P. FLANAGAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## HIGGINBOTHAM, J., DISSENTS AND ASSIGNS REASONS.

I respectfully disagree with the decision of the majority to affirm the judgment of the trial court. While the district court has great discretion to impose reasonable time limits on its docket, those limits "must allow a party to present evidence to support the litigant's case." **Plaia v. Stewart Enters., Inc.**, 2014-0159 (La. App. 4th Cir. 10/26/16), 229 So.3d 480, 490-91. Considering the facts of this case, specifically, the complex financial issues and the trial court's imposition of two-hour time constraints per side, under the guidelines discussed in **Plaia**, the trial court's time limits were unreasonable, as Mr. Flanagan was denied an opportunity to present evidence to support his case. Therefore, I would remand the matter to the trial court to allow Mr. Flanagan that opportunity.

1